**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MICHAEL CORBIN,

    *Plaintiff*,

    v.

COIN-OP WAREHOUSE, LLC *et al*.,

    *Defendants*

Civil Action No.
21-CV-2840-ABA

**MEMORANDUM OPINION**

Plaintiff Michael Corbin filed this action in November 2021, asserting that Defendants Coin-Op Warehouse, LLC and Lloyd Thoburn (together, "Defendants) violated his rights under federal and state wage and hour laws. In August 2022, while this case was pending, Mr. Corbin served a Notice of Intent to Claim Lien on Defendants, alleging what were, as discussed below, the same allegations as those asserted in this case. Defendants timely filed a complaint disputing that lien, leading to a hearing before the Circuit Court for Washington County, Maryland, at which that court (Hon. Andrew F. Wilkinson) made factual findings and entered judgment against Mr. Corbin. Those findings and judgment are preclusive as a matter of law as to all of Mr. Corbin's claims. Accordingly, Defendants' motion for summary judgment will be granted, and judgment entered for Defendants.[1]

**BACKGROUND**

Although the pending motion is one for summary judgment, the basis for Defendants' motion is not the absence of a dispute over material facts, but rather that the parties' factual disputes have been finally and conclusively resolved by virtue of the Washington County

---

[1] The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

judgment. Nonetheless, for background, the Court summarizes the basic facts, beginning with those that are undisputed.

Coin-Op is a Virginia corporation, authorized to operate in the State of Maryland, with its principal place of business in Hagerstown, Maryland. ECF No. 13 (Amended Complaint) ("Am. Compl.") ¶ 2; ECF No. 29 ("Answer") ¶ 2. Its business involves acquiring and selling vintage and contemporary pinball machines, arcade equipment, video games, juke boxes, and other similar equipment and machines. *Id.* During the relevant years, Coin-Op had an annual gross volume of sales made or business done of at least $500,000. Am. Compl. ¶ 4, Answer ¶ 4.

Plaintiff Corbin was hired by Coin-Op originally in 2006, and although the frequency and intensity of his work for Coin-Op is disputed, he worked at least on and off for Coin-Op between 2006 and 2021, including as a driver and/or performing driving related activities. Am. Compl. ¶ 8; Answer ¶ 8. His supervisor was Defendant Thoburn, Am. Compl. ¶ 6, who as Coin-Op puts it was "generally in charge of [Coin-Op's] day-to-day operations." Answer ¶ 3.

Mr. Corbin filed this case in November 2021. His basic contention was that Coin-Op, although paying him a base salary of "approximately" $2,400 per two-week pay period, ECF No. 1 ("Compl.") ¶ 21, failed to pay him overtime wages for the hours he allegedly worked in excess of 40 hours in a given week. *Id.* ¶¶ 15-18, 25, 30. *See also* Am. Compl. ¶¶ 8-14, 21-24, 31, 35 (parallel allegations as asserted in amended complaint). His original complaint asserted claims under the Federal Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA") (Count 1), the Maryland Wage and Hour Law, Md. Code Ann., Labor & Employ. §§ 3-401, *et seq.*, ("MWHL") (Count 2), and the Maryland Wage Payment and Collection Law, Md. Code Ann., Labor & Employ. §§ 3-501, *et seq.* ("MWPCL") (Count 3). Defendants filed a motion to dismiss, which contended that Mr. Corbin's complaint "fail[ed] to allege a sufficient basis to support a

reasonable inference that he worked more than forty hours in at least one workweek." ECF No. 9-1 at 1. In response, Mr. Corbin filed an amended complaint, adding some factual allegations about his alleged job responsibilities, and alleging that he "worked, on average, sixty-five (65) hours per week total." Am. Compl. ¶¶ 8-10 & 13. *See also* ECF No. 15 (redline). The causes of action asserted in the amended complaint remained the same.

Defendants moved to dismiss the amended complaint, ECF No. 20, in response to which Mr. Corbin filed, in addition to a brief in opposition to the motion, a 15-paragraph affidavit asserting facts that he contended precluded dismissal of the amended complaint. ECF No. 22-1 ("Corbin Aff."). Following a hearing on June 14, 2022, this Court (Chief Magistrate Judge Beth P. Gesner) denied the motion to dismiss and entered a scheduling order setting October 27, 2022, as the discovery deadline, with dispositive motions due November 8, 2022. ECF Nos. 26 & 31.

While this case proceeded, Mr. Corbin apparently decided to simultaneously seek relief through another avenue: through the wage lien process set forth in Maryland Rule 15-1402, under which an employee who contends "unpaid wages" are "due and owing" may "serve on the employer a Notice to Employer of Intent to Claim Lien for Unpaid Wages." Md. R. 15-1402(a). The Notice must be "under oath" or "supported by an affidavit," and must set forth the facts that the employee contends entitle the employee to the wages at issue. *Id.*

On August 24, 2022, Mr. Corbin served on Defendants a Notice to Employer of Intent to Claim Lien for Unpaid Wages. ECF No. 66-3. The Wage Lien stated as follows:

> Petitioner was an employee of and performed work for Lloyd Thoburn/Coin Op Warehouse . . . from approximately 2006 . . . to July 30, 2021. Petitioner was not timely and regularly paid wages due and owing for work performed between July 30, 2018 and July 30 2021. The failure to pay was due to . . . Failure to pay for all hours worked[;] Failure to pay minimum wage[;] Failure to pay overtime[;] [and] Failure to pay the wage promised.

*Id.* He further asserted that the wages owed and not paid totaled "at least" $160,000. *Id. See also* ECF No. 56-2 ("June 2023 Tr.") at 3. The lien notice, however, was neither submitted under oath, nor accompanied by an affidavit, as required by Maryland Rule 15-1402.

On September 21, 2022, Coin-Op and Mr. Thoburn timely filed a complaint in the Circuit Court for Washington County, Maryland, to dispute Mr. Corbin's August 2022 wage lien notice. ECF No. 66-1. *See also* Md. Code Ann., Labor & Empl. § 3-1103(a) ("An employer may dispute a lien for unpaid wages by filing a complaint in the circuit court…"); Md. R. 15-1403 (requiring, among other things, that any such complaint must be filed within 30 days of service of a lien notice). Coin-Op and Mr. Thoburn asserted in that complaint, among other things, that Mr. Corbin "was paid for all hours worked, was paid well in excess of the minimum wage, was paid overtime during the short time period he was entitled to same (i.e. when he was not exempt under the Motor Carrier Act, discussed below) and was paid all wages he was promised." ECF No. 66-1 at 2. They further contended that during the majority of his employment by Coin-Op he "was providing truck driving and driving related services which rendered him exempt from Federal and Maryland overtime pay requirements," *id.*, and expressly contested Mr. Corbin's entitlement to overtime under the FLSA and MWHL. *Id.* at 3 n.2 (citing *Hill v. B. Frank Joy, LLC*, TDC-15-1120, 2016 WL 4194189, *3 (D. Md. Aug. 9, 2016); *Veney v. John W. Clarke, Inc.*, 28 F. Supp. 3d 435, 442 (D. Md. 2014)).

Service of that complaint triggered a 10-day deadline for Mr. Corbin to answer the complaint, move to dismiss, or withdraw the lien. Md. R. 15-1403(d). Although Mr. Corbin retained new counsel and sought to withdraw the lien, the withdrawal notice was untimely, filed one day after the deadline. June 2023 Tr. at 4. Accordingly, the Circuit Court proceeded to

adjudicate the case, including whether Mr. Corbin was entitled to any of the additional wages as to which he asserted a lien.

Following a hearing, the Circuit Court held that (1) Mr. Corbin had failed to establish any entitlement to additional wages, (2) Mr. Corbin's request to withdraw the lien notice was untimely and thus was denied, and (3) Mr. Corbin's failure of proof was so egregious as to be "frivolous or made in bad faith" thereby entitling Coin-Op and Mr. Thoburn to recovery of their attorneys' fees and court costs incurred in responding to the lien notice including in the Circuit Court proceedings challenging the lien. *Id.* at 4.

In the course of that and subsequent hearings, including on Coin-Op's fee petition, the Circuit Court made detailed findings of fact based on the documentary and testimonial evidence that had been presented. The Circuit Court found that Mr. Corbin was "employed by Coin-Op from about 2012 to 2021," and "had various duties for the company, most notably . . . being a driver, driving intrastate and driving interstate to pick up and make deliveries." *Id.* The court found that although Mr. Corbin claimed that he worked more hours than he had been paid for, he "got paid wages on time," and had failed to establish any entitlement to additional wages, particularly because in addition to the wages he admitted he was paid, he "got paid additional money maybe up to two thousand dollars per month, cash," but he "didn't keep track." *Id.* at 5, 7.

The Circuit Court made other findings indicating a lack of credibility on Mr. Corbin's part. The court found that although Mr. Corbin had authorized and instructed that the notice of lien be issued and served, "he had not done the math [to] determine the one hundred and sixty thousand" or even reviewed the notice of lien before it was filed. *Id.* at 4. Mr. Corbin "had taken unemployment pay from the government while also working for this employer." *Id.* Mr. Corbin made false statements to the IRS when he represented that he had an income of "twenty-two

thousand dollars," where "bank statements in that year for only two months . . . showed twenty-eight thousand dollars of income or deposits." *Id.* at 8. And although Mr. Corbin had contended that Coin-Op "didn't keep timecards," the Circuit Court found that "it's clear that they did" and that Mr. Corbin "just refused to use them," and instead "kept his time on a little index card or a little small piece of paper that he kept in his wallet." *Id.* at 5, 7.

The Circuit Court further examined the affidavit that Mr. Corbin had filed in this case under penalties of perjury in opposing Defendants' motion to dismiss (ECF No. 22-1), and found that Mr. Corbin had made multiple "untrue statements" in that affidavit. June 2023 Tr. at 5. Although the Circuit Court did not specify which statements it found to be untrue, the Circuit Court's findings expressly and directly contradicted a number of Mr. Corbin's statements in the affidavit.

Based on those findings of fact and the record as a whole, the Circuit Court held that not only had Mr. Corbin not shown any entitlement to additional wages, but that his assertion of the wage lien notice and the representations made therein were "frivolous and in bad faith," entitling Coin-Op and Mr. Thoburn to recover their attorneys' fees and costs. *Id.* at 8-9. As the court explained:

> What is dispositive to me [on whether the lien notice was frivolous] was the impeachment of Mr. Corbin on the witness stand. From Mr. Corbin, I haven't done the math. I didn't draft the Notice of Lien. I didn't review the Notice the Lien. I took unemployment from the government while I was also working. I had six children and four vehicles and in 2019 I only make twenty-two thousand dollars. That's what he told the IRS. And yet, I have bank statements in that year for only two months that showed twenty-eight thousand dollars of income or deposits. No explanation to me what else he made in the following in the other ten months of that year. I'm concerned what he told the IRS is not even close. From Mr. Corbin, "Yes, I made untrue statements in my sworn Affidavit in Federal Court." "I am not a driver." "There were no timecards." Although, there were he just refused to use them. "I got paid an additional amount of cash

each month, maybe up to two thousand dollars." "I never kept track but I know I'm owed at least a hundred and sixty thousand." I believe he got paid extra. But to not keep track and then say I'm still owed one sixty is not believable. You cannot know how much money you are owed if you did not keep track. Mr. Corbin was guessing how much is owed and that's putting it nicely. To me, guessing is not good faith. Guessing in this context is frivolous and in bad faith.

*Id.* at 7-9. For those reasons, the Circuit Court found that Mr. Corbin's "effort to establish a lien for unpaid wages was brought frivolously and in bad faith." *Id.* at 9.

The Circuit Court then entered judgment against Mr. Corbin, and in favor of Coin-Op and Mr. Thoburn, for the amount of $27,832.20. ECF No. 56-3 at 1. Mr. Corbin has since filed a notice of appeal of that judgment.

Coin-Op and Mr. Thoburn (who are Defendants here, but were plaintiffs in the Circuit Court action) have now moved in this Court for summary judgment on the basis of the Circuit Court's findings, and the judgment in their favor and against Mr. Corbin. ECF No. 56 & 56-1 ("Defs.' Mem."). Mr. Corbin has filed an opposition brief, ECF No. 63 ("Pl.'s Opp."), and Defendants have replied, ECF No. 64 ("Defs.' Reply").

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment on a "claim or defense-or the part of [any] claim or defense," by showing that "there is no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H Kress & Co*., 398 U.S. 144, 157 (1970). If a party carries this burden, then the Court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). If sufficient evidence exists for a reasonable factfinder to

render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment will be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position," however, is insufficient to defeat a motion for summary judgment. *Id.* at 252.

## DISCUSSION

The question presented is a legal one: do the factual findings, and/or judgment, of the Circuit Court for Washington County, Maryland operate to preclude Mr. Corbin's federal claims as a matter of law and require entry of judgment for Defendants? The preclusive effect of a state court judgment is a question of state law. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). As a matter of both claim and issue preclusion under Maryland law, Mr. Corbin's claims asserted in this court are precluded, and Defendants are entitled to judgment as a matter of law.

### A.      **Claim Preclusion**

Under Maryland law, the doctrine of claim preclusion, or *res judicata*, "bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation." *Board of Ed. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005). "The doctrine embodies three elements: (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final

judgment on the merits in the prior litigation." *R & D 2001, LLC v. Rice*, 938 A.2d 839, 848

(Md. 2008).

Here, there is no dispute that the parties in the Circuit Court action and this case are the

same, and that the Circuit Court entered a final judgment on the merits. The question of whether

the Circuit Court judgment is preclusive as a matter of claim preclusion thus turns on whether

Mr. Corbin's claims in this case—under FLSA, the Maryland Wage and Hour Law, and the

Maryland Wage Payment and Collection Law—are "identical" to those "determined" in the

Circuit Court action or to claims that "could have been raised and determined" in that action. *See*

*R&D 2001*, 938 A.2d at 848. On that question, the Maryland courts have adopted Section 24 of

the Restatement (Second) of Judgments, *see Andrulonis v. Andrulonis*, 998 A.2d 898, 908 (Md.

App. 2010), which provides as follows:

> (1) When a valid and final judgment rendered in an action
> extinguishes the plaintiff's claim pursuant to the rules of merger or
> bar . . . , the claim extinguished includes all rights of the plaintiff to
> remedies against the defendant with respect to all or any part of the
> transaction, or series of connected transactions, out of which the
> action arose.
>
> (2) What factual grouping constitutes a "transaction", and what
> groupings constitute a "series", are to be determined pragmatically,
> giving weight to such considerations as whether the facts are related
> in time, space, origin, or motivation, whether they form a convenient
> trial unit, and whether their treatment as a unit conforms to the
> parties' expectations or business understanding or usage.

*Id.* at 908 (quoting Restatement (Second) of Judgments ("Restatement") § 24 (1982)). "In

general, the expression connotes a natural grouping or common nucleus of operative facts."

Restatement (Second) of Judgments § 24, cmt. b (1982).

Here, there can be no serious dispute that the claims in the two cases arose from the same

"common nucleus of operative facts," *id.*, such that the claims in the two cases are "substantially

identical" for claim preclusion purposes. *See Norville*, 887 A.2d at 1037. Mr. Corbin filed this case seeking recovery of wages he contended he was owed and had not been paid for work he allegedly performed for Defendants. In particular, he alleged that for approximately 15 years, "including" between November 2018 and July 2021 (the 3-year lookback period for limitations purposes), he had provided "a variety of services to Defendants, including much long-distance driving, local deliveries, and pick-ups in Defendants' vehicles, renovation services at Thoburn's properties, and handyman services, including at Thoburn's personal residence." Compl. ¶ 8. He alleged that he worked over 40 hours per week, and yet was never paid amounts beyond the alleged "fixed salary" of "approximately" $2,400 per week. *Id.* ¶¶ 9-10. In his amended complaint, he elaborated on that list of alleged services for which he contended he had not been paid, Am Compl. ¶¶ 8-10, but his core theory of liability—failure to pay overtime—remained the same. *Id.* ¶¶ 14-15. The only theories of liability asserted for the first time in the amended complaint were (a) an allegation that Defendants had not "displayed any poster advising Plaintiff and other employees of their rights to minimum wage and overtime pay under the FLSA or the MWHL, as required by law," *id.* ¶ 16, and (b) that he had been "promised" two weeks of paid vacation per year but "was never able to use any vacation time," *id.* ¶ 17. The causes of action remained the same.

Those claims are the same ones that gave rise to Mr. Corbin's wage lien notice, and then Defendants' action in the Circuit Court challenging that lien. As noted above, the reason Mr. Corbin filed his notice of lien was his belief that he had "not timely and regularly" been paid "wages due and owing" for work he performed for Coin-Op and Mr. Thoburn "between July 30, 2018 and July 30, 2021." ECF No. 66-3. He specifically alleged in the notice of lien that Defendants' "failure to pay" were due to what he alleged was a failure "to pay for all hours

worked," "to pay minimum wage," "to pay overtime," and "to pay the wage promised." *Id.* It was those claims that were then fully and finally litigated in the Circuit Court action, resulting in the judgment entered on June 30, 2023. ECF No. 56-3.

The similarity of Mr. Corbin's claims in the Circuit Court action and this action squarely render the claims "identical" for claim preclusion purposes. *See Pisner v. McCarthy*, 630 F. Supp. 3d 690, 699-701 (D. Md. 2022) (where Circuit Court, in prior proceeding, had rejected plaintiff's arguments that court-appointed trustee had "breached his powers and failed to comply with statutory requirements" with respect to administration of trust established by the plaintiff's mother, and plaintiff in subsequent federal action sought damages and other relief against same court-appointed trustee for claims arising from the same administrator's trusteeship, holding that claims in both actions arose "from the same nucleus of facts and the same evidence" and thus defendants were entitled to dismissal on claim preclusion grounds); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162-63 (4th Cir. 2008) (holding that the claims were identical even though the first suit was a facial challenge and the second was an as-applied challenge); *Leeds Fed. Savings & Loan Assoc. v. Metcalf*, 630 A.2d 245, 251 (Md. 1993) (finding that the claims in the two suits were identical because the issue that was essential to the decision of the first court was the same issue that was essential to the decision of the second court). *See also Kissi v. EMC Corp.*, 887 F. Supp. 2d 1, 7 (D.D.C. 2012) (applying Maryland law and concluding that there was "no doubt" that Maryland Circuit Court ratification of foreclosure sale precluded homeowner's federal court claims asserting fraud and misrepresentation); *Simmons v. Trans Express Inc.*, 16 F.4th 357, 359, 362 (2d Cir. 2021) (holding that plaintiff's prior small claims court judgment, brought to recover "monies arising out of nonpayment of wages," was claim preclusive as to subsequent FLSA and New York Labor Law claims).

Finally, although from the docket it appears Mr. Corbin has appealed the Circuit Court judgment, "the pendency of an appeal does not affect the finality of a judgment for res judicata purposes." *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1041 (Md. App. 2004). In the event the Maryland appellate courts were to vacate the Circuit Court judgment in ways that would render the judgment no longer preclusive as to Mr. Corbin's claims asserted in this case, that is what Rule 60(b)(5) is for. *See* Fed. R. Civ. P. 60(b)(5) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" where "the judgment . . . is based on an earlier judgment that has been reversed or vacated.").

For these reasons, the Circuit Court case and this case arose out of same "transaction, or series of connected transactions." *See* Restatement § 24(2). The entry of final judgment against him in the Circuit Court operates to preclude relief in this case as a matter of law.

## B.   Issue Preclusion

Moreover, even were claim preclusion not to apply, the "somewhat allied doctrine" of issue preclusion, which "looks to issues of fact or law that were actually decided in an earlier action, whether or not on the same claim," *R & D 2001*, 938 A.2d at 848-49, requires entry of judgment for Defendants as well.

"When an issue of fact or law is actually litigated and determined by a valid and final judgment, . . . the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* at 849 (citations and internal quotation marks omitted). *See also Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. The Fund for Animals, Inc.*, 153 A.3d 123, 142 (Md. 2017) ("The doctrine of collateral estoppel precludes a party from re-litigating a factual issue that was essential to a valid and final judgment against the same party in

12

a prior action.") (citations omitted). Under Maryland law, a factual issue resolved in a prior action is preclusive where (1) "the issue decided in the prior adjudication" is "identical with the one presented in the action in question"; (2) there was a "final judgment on the merits" of the prior adjudication; (3) "the party against whom the plea is asserted" was "a party or in privity with a party to the prior adjudication"; and (4) "the party against whom the plea is asserted" was "given a fair opportunity to be heard on the issue." *Id.* (citations omitted).

Here, there is no question that the Circuit Court entered a final judgment, against Mr. Corbin and in favor of Coin-Op and Mr. Thoburn. That leaves questions (1) and (4).

As for whether the "issue[s] decided" in the Circuit Court action were "identical with the one[s] presented in the action in question," the Circuit Court made express factual findings on a number of issues that bar Mr. Corbin from recovery here. Most fundamentally, the Circuit Court found that Mr. Corbin had not shown that he worked any hours for which he was not paid, or any hours that exceeded 40 hours in a given week for which he was not paid an overtime rate. June 30 Tr. at 4 (referring to earlier hearing where court "denied . . . Corbin's claim for unpaid wages"). Those findings were premised in part on a complete failure of proof, *e.g.*, *id.* at 7-9, and in part on credibility determinations, *e.g.*, *id.* at 8-9. The Circuit Court went further, going so far as to find that Mr. Corbin's allegations were "frivolous" and made "in bad faith," and on that basis awarded over $27,000 in fees and costs to Coin-Op and Mr. Thoburn. *Id.* Those findings preclude Mr. Corbin from establishing liability on any of his claims in this case.[2]

---

[2] The only theory asserted in this case as to which the record does not reflect findings in the Circuit Court action is Mr. Corbin's allegation that Defendants had not "displayed any poster advising Plaintiff and other employees of their rights to minimum wage and overtime pay under the FLSA or the MWHL, as required by law." Am. Compl. ¶ 16. Mr. Corbin does not assert, however, that that claim, which he asserted for the first time in his amended complaint, would entitle him to relief or would otherwise justify denying Defendants' motion for summary judgment.

The record also establishes that Mr. Corbin was "given a fair opportunity to be heard" on these factual issues, *Nat'l Union Fire*, 153 A.3d at 142. Mr. Corbin was represented by counsel in the Circuit Court action, and the Circuit Court permitted Mr. Corbin to submit evidence in support of his claims, *see, e.g.*, June 30 Tr. at 2, and held multiple hearings, on December 2, 2022, May 22, 2023, and June 30, 2023. ECF No. 63-3 (docket, reflecting hearing dates). Mr. Corbin's sole argument in opposition to issue preclusion is that granting issue-preclusive effect to the Circuit Court findings "deprive[s]" him of his "jury trial right under state law" and/or under the Seventh Amendment of the U.S. Constitution. Pl.'s Opp. 5. The U.S. Supreme Court rejected that theory in *Parklane Hosiery Co., Inc. v. Shore*: "[A]n equitable determination can have collateral estoppel effect in a subsequent legal action and . . . this estoppel does not violate the Seventh Amendment." 439 U.S. 322, 335 (1979). And as for *Hashem v. Taheri*, 571 A.2d 837 (Md. App. 1990), which Mr. Corbin cites, that case addresses whether, when a plaintiff asserts claims *within the same action* that require overlapping factual findings and only one gives rise to a jury right, the court may try the equitable (*i.e.*, non-jury) claims first. The *Hashem* court held that in that scenario, Article 23 of the Maryland Declaration of Rights "guarantees [the party] a right to a trial by jury on [that] question." 571 A.2d at 840. Here, the Circuit Court action and this case are different cases, and thus the *Parklane Hosiery* rule squarely applies.

The Circuit Court for Washington County made express and evidence-based factual findings that Mr. Corbin had not shown that Coin-Op or Mr. Thoburn ever failed to pay wages they owed him. Those factual findings are binding and preclusive, and thus independently entitle Defendants to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, by virtue of the judgment of the Circuit Court for Washington County and findings of fact reflected therein, Defendants are entitled to judgment as a matter of law. An appropriate order follows.


Date:   November 8, 2023                         _____/s/_____
                                                 Adam B. Abelson
                                                 United States Magistrate Judge